PAUL J. STEINER [SBN: 41117]
LAW OFFICES OF PAUL. J. STEINER
580 California Street, 12th Floor
San Francisco, CA 94194
Telephone: (415) 981-6100
Facsimile: (415) 984-0950
Email: paul@sfpaulaw.com

Attorneys for Plaintiff
LADY BENJAMIN P.D. CANNON. A.S.C.E.

FILED
SEP 15 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT,

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LADY BENJAMIN P.D. CANNON, A.S.C.E.<br><br>Plaintiff,<br>vs.<br><br>MATTHEW MARTIN MCGETTIGAN, an individual, BARBARA JANE MCGETTIGAN, an individual. JERRY DEAL, an individual. CYRIL HACKETT, an individual. RANDY MAUPIN, an individual. PATRICIA A BYRNE, an individual. JOHN SELGRATH, an individual. THE TRUST FOR THE BENEFIT OF MATTHEW MARTIAN MCGETTIGAN, a trust, JERRY'S FAERIES, LLC, a California Limited Liability Company. KEZAR PUB, LLC, a California Limited Liability Company. CAT CLUB, a California company or partnership of undetermined type, F8 SF, a California company or partnership of undetermined type, MAD DOG IN THE FOG, a California company or partnership of undetermined type, DOES ONE through DOE 100, inclusive,<br><br>Defendants, | Case No. CV25 7834 JCS<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**1. CONSPIRACY.**<br>**2. ATTEMPTED MURDER, & BATTERY.**<br>**3. ASSAULT.**<br>**4. FALSE IMPRISONMENT.**<br>**5. PIRACY AT SEA.**<br>**6. VEHICLE THEFT, VANDALISM.**<br>**7. CONVERSION OF PROPERTY.**<br>**8. DEFAMATION, FALSE LIGHT, DOXXING.**<br>**9. NEGLIGENCE.**<br>**10. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br>**11. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**<br>**12. UNRUH CIVIL RIGHTS ACT CAL. CIV. CODE § 51, et seq., SEXUAL HARASSMENT,**<br><br>**and**<br><br>**DEMAND FOR TRIAL BY JURY** |

BY FAX

Plaintiff, Lady Benjamin P.D. Cannon, A.S.C.E., alleges as follows:

## THE PARTIES

1. Plaintiff Lady Benjamin P.D. Cannon, A.S.C.E. ("CANNON" or "PLAINTIFF") is an individual who is a highly accomplished and skilled aerospace engineer, earning a high net worth, a member of the American Society of Civil Engineers, and the I.E.E.E Society, retired licensed engineering contractor, and co-founder and Chief Technology Officer of an EV battery company, and founder of a global telecommunications company[1] who is also a Lady of Scotland and an openly lesbian intersex cisgender woman. In addition, Lady Benjamin is the holder of a "TWIC" credential from the Transportation Security Agency (TSA)-- this credential allows her to access the nation's secure areas of U.S. Maritime Ports and Vessels under the "Maritime Transportation Security Act"[2]. is completing her required sea time to become a USCG "Master" commercial Captain.

2. Defendant Matthew Martin McGettigan ("MCGETTIGAN" or "DEFENDANT") is an adult individual who resides in San Francisco and has a history of serious legal trouble involving illegal drug use and dealing including felonies and convictions and a history of drug use, drug trafficking, and of robbing and causing damage to property and threatening and actually causing great bodily harm to individuals. In addition, MCGETTIGAN holds himself out to be an electrical contractor, but is not licensed, but has used this position to gain entrance and influence in certain circle. MCGETTIGAN has known PLAINTIFF for a long time and has a long history of engaging in criminal and otherwise wrongful conduct against PLAINTIFF as partially hereinafter set forth. MCGETTIGAN is also a domestic abuser causing harm even to those close to him.

3. Defendant Barbara Jane McGettigan ("BARBARA JANE") is an adult individual who resides in San Francisco CA. BARBARA JANE is MCGETTIGAN'S mother. BARBARA JANE allows her son to live with her from time to time, shares certain

---

[1] https://www.linkedin.com/in/ladybenjamin/

[2] https://www.tsa.gov/twic#:~:text=The%20Transportation%20Worker%20Identification%20Credential,nation's%20maritime%20facilities%20and%20vessels.

property including stolen property with him and/or allows him to store stolen property at her home for future sale and distribution or other unlawful use. In addition, BARBARA JANE otherwise facilitates MCGETTIGAN'S unlawful activities by knowing of those activities and providing funds, comfort and other material support to MCGETTIGAN to assist him in escaping being held accountable.

4. Defendant Jerry Deal ("DEAL") is an individual, and the owner of defendant Jerry's Faeries, LLC. DEAL is MCGETTIGAN's business partner and/or employer, and supervisor. DEAL is a licensed United States Coast Guard ("USCG") commercial vessel captain.

5. Defendant Cyril Hackett ("HACKETT") is an individual and owner of defendant "KEZAR PUB, LLC". HACKETT entered into contracts with PLAINTIFF, PLAINTIF is informed and believes and based thereon says that HACKET knowingly received and converted PLAINTIFF's stolen property. MCGETTIGAN claims to be a partner or engineer at this club. MCGETTIGAN claims to be a partner or engineer at this club and has done extensive illegal electrical and other work as well as spread lies about CANNON.

6. Defendant Randy Maupin ("MAUPIN") is an individual and manager of defendant "CAT CLUB.

7. Patricia A Byrne ("BYRNE") is an individual and trustee of "The Trust for the Benefit of Matthew Martian MCGETTIGAN".

8. John Selgrath ("SELGRATH"), is an individual and trustee of "The Trust for the Benefit of Matthew Martian MCGETTIGAN".

9. The Trust for the Benefit of Matthew Martian McGettigan ("MATTHEW MCGETTIGAN TRUST "), a trust set up in California for the benefit of defendant MCGETTIGAN. It is not presently known if this is the true and correct name of the trust, or if there are additional trusts involved in this litigation, therefore the trust is sued under the language used to describe it in other filed legal documents, PLAINTIFF will amend her complaint as needed once and if the true legal name(s) of the Matthew McGettigan Trust(s) are known.

10. Defendant Jerry's Faeries, LLC ("JERRY'S FAERIES") is a California Limited Liability company 100% owned by defendant DEAL and used to shelter or operate his commercial vessel fleet including the tenders used by MCGETTIGAN and referenced in this litigation. PLAINTIFF is informed and believes and based thereon asserts that JERRY'S

FARIES is also used for other legitimate and illegitimate purposes, and that MCGETTIGAN, with the knowledge and consent of DEAL, holds himself out to be a partner and/or engineer at this business and has used company equipment and vehicles to attack and attempted to murder and/or cause serious bodily harm to CANNON. These actions and other wrongdoing by MCGETTIGAN against CANNON are well known to DEAL, who has knowingly permitted and facilitated many of the wrongful acts of MCGETTIGAN described herein.

11. Defendant Kezar Pub, LLC ("KEZAR PUB") is a California Limited Liability company wholly owned by defendant HACKETT. With the knowledge and consent of HACKETT, MCGETTIGAN claims to be a manager, partner or engineer at this club, and has done extensive illegal electrical and other work as well as spread lies amongst employees and regular customers about CANNON. Some of MCGETTIGAN'S wrongful conduct described herein has occurred in or about the premises of KEZAR PUB whose owner has permitted it to occur and facilitated MCGETTIGAN'S wrongful conduct with materiel, comfort and support.

12. Defendant Mad Dog in the Fog, Inc ("MAD DOG") is a California Corporation 100% owned by defendant HACKETT and is an alter/ego of him and KEZAR PUB. With knowledge and consent of HACKETT, MCGETTIGAN holds himself out to be a manager, partner or engineer at this club and has done extensive illegal electrical and other work as well as spread lies about CANNON. Some of MCGETTIGAN'S wrongful conduct described herein has occurred in or about the premises of MAD DOG, whose owner has permitted it to occur and facilitated MCGETTIGAN'S wrongful conduct with materiel, comfort and support.

13. Defendant Cat Club ("CAT CLUB") is a California business venture that is either a corporation, limited liability corporation, partnership or other form of organization operating a nightclub in San Francisco under the same name. MCGETTIGAN claims to be a manager, partner or engineer at this club and has done extensive illegal electrical and other work at the club. as well as spread lies about CANNON as hereinafter set forth. Some of MCGETTIGAN'S wrongful conduct described herein has occurred in or about the premises of CAT CLUB whose owner has permitted it to occur and facilitated MCGETTIGAN'S wrongful conduct with materiel, comfort and support.

14. Defendant F8 SF ("F8") is a California business venture that is either a corporation, LLC, or partnership or other organization operating a nightclub in San Francisco. Defendant

MCGETTIGAN claims to be a manager, partner or engineer at this club and has done extensive illegal electrical and other work as well as spread lies about CANNON. Some of MCGETTIGAN'S wrongful conduct described herein has occurred in or about the premises of F8 whose owner has permitted it to occur and facilitated MCGETTIGAN'S wrongful conduct with materiel, comfort and support.

15. Plaintiff does not know the true names and capacities of Does 1 through 100, inclusive, and therefore sues them by those fictitious names. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that each of those Doe defendants was in some manner negligently and proximately responsible for the events and happenings alleged in this complaint and for Plaintiff's injuries and damages. Plaintiff will ask for leave to amend the Complaint to allege the true names and capacities of each of the Doe defendants when the same has been determined.

## JURISDICTION AND VENUE

16. Defendants, and each of them, are subject to the jurisdiction of this court by virtue of their business dealings and transactions in California and by the fact that the injuries allegedly caused by Defendants are believed to have been caused through the acts and omissions of defendants occurring within the County of San Francisco. Jurisdiction is further proper in this court because a federal question is presented as PLAINTIFF makes claims and seeks remedies pursuant to federal statute, namely Article 101 of 1982 UNCLOS, 18 U.S. Code § 1651, et. seq. (Piracy at Sea).

17. Venue is proper in this county as Defendants conducted business in this County, and a substantial part of the events, acts, omissions and transactions complained of herein occurred in this County.

18. The amount in controversy exceeds the jurisdictional minimum of this court.

## FACTS COMMON TO ALL CAUSES OF ACTION

### September 19 2023 Attempted Murder – SSFPD Case no 32-5358

19. On or about September 19, 2023, at about midnight, and without permission, DEFENDANT MCGETTIGAN climbed aboard Plaintiff CANNON's USCG documented

vessel in an act of illegal boarding at sea violating 18 U.S. Code § 1651, woke her up, assaulted, threatened, bullied and accosted her.

20. CANNON has learned that MCGETTIGAN had kidnapped his partner, Justin Christensen, and had been assaulting him, and brought him to CANNON'S vessel against Christensen's will during this misadventure; CANNON noted Christensen's screams for help and his unwilling presence in MCGETTIGAN'S 14' aluminum boat which MCGETTIGAN used in the illegal boarding. CANNON immediately informed MCGETTIGAN that he was not allowed on her boats at any time and that he had to leave.

21. CANNON demanded that MCGETTIGAN leave but MCGETTIGAN refused. CANNON again demanded that MCGETTIGAN leave, which MCGETTIGAN again refused to do. CANNON then took out her cell phone and said "Fine, I am calling 9-11" at which point MCGETTIGAN grabbed the phone out of her hands, preventing her from contacting emergency services in violation of California Penal Code 591.5, and smashed the phone on the ground.

22. MCGETTTIGAN then illegally and criminally battered CANNON, violently shoving her backwards off the tall stool she was sitting on, such that she fell backwards and hit the back of her head on the floor[3]. This briefly knocked CANNON unconscious, and when she woke up, MCGETTIGAN was on top of her, strangling her, and said "You're going to die, bitch![4]" MCGETTIGAN then proceeded to grab CANNON's arms so hard they have sustained permanent nerve damage, and proceeded to pinch her arms and bash her head into the ground repeatedly, attempting to kill her.

23. CANNON was able to struggle free, and grab a pole with which to defend herself, and MCGETTIGAN *retreated* to his 14' boat with his kidnapping victim, and sped away into the night, but not before screaming one final threat "I will come back and cut your [anchor] lines!"

24. As MCGETTIGAN had previously vandalized PLAINTIFF'S boat such that the main engine no longer operated and he had wrapped a rope around the boat's propeller shaft, MCGETTIGAN knew his actions were a potential death threat because cutting a boat's

---

[3] California Penal Code 243(e)(1)
[4] California Penal Code 664/187

anchor lines from where CANNON'S vessel was located would likely result in the serous bodily injury or death of all occupants onboard as the tides in the San Francisco Bay will quickly sweep the boat all the way out into the Pacific Ocean in a matter of hours.

**<u>October 14 2024 Theft of Vessel – SSFPD Case no 23-5877</u>**

25. On or about October 14, 2024, MCGETTIGAN stole Plaintiff's Walker Bay WB8-M boat, hull ID number US-EWVA9184B999, vessel name "GOTBIER II" , an 8 foot polyethylene boat with electric motor and battery and tender to a larger 42' ship "GOTBIER" that is USCG documented and USA flagged for international travel, for a second time, while Plaintiff and her companion were out to dinner at the nearby AC Hotel. MCGETTIGAN denied taking the vessel but told police where they could find it.

26. CANNON located the vessel, stripped of its valuable parts including outboard motor, lead weights, anchor, and other accessories, exactly where MCGETTIGAN told the police it would be, tied illegally to a dock at Oyster Cove Marina.

27. MCGETTIGAN's theft left CANNON with no way to get home to her vessel at anchor, and placed her life in imminent danger.

**<u>November 28 2024 Second theft of vessel – Attempted Sinking - SSFPD Case no 24-5774 and Piracy at Sea</u>**

28. Defendant MCGETTIGAN is a partner, crew member, employee, co-conspirator or otherwise collaborator with defendant DEAL and defendant JERRY'S FAIRIES. JERRY'S FAIRIES is a commercial vessel charter service owned and operated by DEAL and managed my MCGETTIGAN. MCGETTIGAN is listed as a crew member/partner/etc. on many public postings by DEAL and they regularly do drugs together, harass boaters together, and work together for profit as United States Coast Guard ("USCG") licensed captain. MCGETTIGAN has no such license, while DEAL appears to possess a USCG license somehow despite being in violation of its terms due to drug abuse. They like to do Ketamine together and when they do so, they operate several large powerboats unsafely and in a dangerous manner, putting the lives of other mariners in danger.

29. On or about November 28, 2024, MCGETTIGAN used a tender from "DRAGON LADY", a large ultra luxury 85' charter yacht boat belonging to Defendants DEAL and JERRY's FAIRIES, in an act of piracy at sea and vandalism and attempted murder against CANNON. MCGETTIGAN launched the tender directly from DRAGON LADY and proceeded over the seas to CANNON's vessels to attach them. DEAL allowed MCGETTIGN

to use DRAGON LADY to attach CANNON's fleet at sea on multiple occasions, even after being told by CANNON that MCGETTIGAN was using DRAGON LADY to attack her fleet. DEAL continued to outfit MCGETTIGAN for piracy at sea even after being informed of the piracy. These acts were undertaken with the consent and under direction of the said defendants and represent a coordinated conspiracy and attack of a USCG documented vessel on United States waters.

30. The conspiring entities used the DRAGON LADY tender to physically get to, illegally board and attempt to sink a USCG documented vessel owned by CANNON, the intent being the serious bodily injury to or killing of everyone aboard. They subsequently used the tender owned by DEAL and JERRY'S FAIRIES to flee the scene of the crime, and to conceal the crime.

31. MCGETTIGAN started by again stealing Plaintiff's Walker Bay WB8-M boat, hull ID number US-EWVA9184B999 "GOTBIER II" 8-foot tender, while PLAINTIFF was ashore celebrating the Thanksgiving holiday. MCGETTIGAN again stripped the boat of all valuables, including its newly purchased Newport Vessels 55lb electric outboard motor, Redodo battery serial number 1200BNNA70-A01027, anchor, weights, and Personal Flotation Devices (PFD's- -Lifejackets). Again, MCGETTIGAN dumped the hull of the boat nearby and it was recovered days later by CANNON. It is believed that this was done to prevent CANNON from accessing her large 42' USCG documented and US flagged power boat "GOTBIER" at sea after MCGETTIGAN, DEAL, and JERRY's FAIRIES had boarded her, vandalized her, and then attempted to scuttle her with all hands aboard.

32. It is believed, this time the theft of the tender was part of a multi-pronged assault on CANNON's 42' boat, the USCG Documented Vessel named "GOTBIER", upon which she lives, which was at anchor in the San Francisco Bay at the time.

33. In addition, the same night that MCGETTIGAN stole the vehicle PLAINTIFF uses to get back to her main boat, MCGETTIGAN attacked GOTBIER, MCGETTIGAN cut two anchor lines (just as he threatened to during his attempted murder of CANNON on Sept 19 2023) and he also cut the vessel's electrical power cord in such a way as to expose it's conductors to sea-water, and then he placed the cable's severed and cut end into the sea – shorting it out. This effort was successful, and the electrical power did indeed short out, and the boat began to sink.

34. MCGETTIGAN did this on purpose, knowing that the GOTBIER, which he had

sabotaged and nearly sank previously during a theft of the title documentation would sink if not connected to electrical power or if its electrical power was interrupted or batteries drained. It is believed that MCGETTIGAN severed this cable and shorted it out in seawater with the express intention of sinking the vessel with all hands aboard.

35. In addition to the above, MCGETTIGAN also cut at least eight separate mooring lines attaching CANNON's floating dock (with couch, stairs, and tender docking stations) to the Gotbier, sending the floating dock adrift in the Bay It is further believed and based thereon alleged, that MCGETTIGAN severed GOTBIER's anchor lines in an effort to not only sink but send the USCG documented vessel adrift into distress into the Bay, where it would likely sink with all hands aboard. The vessel sleeps six people, and it is believed that MCGETTIGAN intended to or was entirely indifferent to the likelihood that his action would kill everyone aboard.

36. MCGETTIGAN also threatened to commit this very attack during his previous attempted murder of CANNON on September 19, 2023.

**December 14, 2024 MCGETTIGAN Crashes His Boat into CANNON's Boat – SSFPD 24-12140181**

37. On or about December 14, 2024, Defendant MCGETTIGAN, while under the influence of drugs, crashed his ~45,000lb 36' Marine Trader trawler boat "HAMCAT" as well as 2 other boats into CANNON's anchored boat, causing damage and endangering her life. The boats repeatedly bashed into CANNON'S boat for several days during a storm. Instead of moving his boat, MCGETTIGAN or his agent lit a fire consisting of plastic and oil on their boats presumably to keep warm and do more drugs (methamphetamine). The fumes from the fire caused CANNON to become lightheaded, dizzy, and in danger of passing out. CANNON called SFPD and SFFD and San Francisco Fire responded as did Oyster Point Harbor Patrol (San Mateo County Harbor District) and South San Francisco Police Department. Days later the boats were finally moved. MCGETTIGAN'S' boat(s) were filled with flammables illegally and unsafely stored. MCGETTIGAN and/or his associate and co-conspirator were responsible for a previous fire that engulfed at least 3 boats, almost killed 4, injured 1, and left

environmental hazards that are still being cleaned up[5].

**February 28, 2025 Third theft of vessel**
**– SSFPD Case no 25-1048**

38. On or about February 28, 2024, at 9:28 a.m., defendant MCGETTIGAN again used tenders from DRAGON LADY and JERRY DEAL, JERRY's FAIRIES, during which time he stole PLAINTIFF'S Walker Bay WB8-M boat, hull ID number US-EWVA9184B999 "GOTBIER II" boat again, while PLAINTIFF was ashore visiting family. MCGETTIGAN yet again stripped the boat of all valuables, including its newly purchased Newport Vessels 62lb electric outboard motor, Redodo battery serial number 1200BNN100-A00966, anchor, weights, and PFDs (Personal Flotation Devices – Lifejackets). This again deprived CANNON of a way to get home, leaving her stranded ashore.

39. Again, MCGETTIGAN dumped the hull of the boat nearby and it was recovered approximately 30 days later by the Brisbane Police Department working in conjunction with the United States Coast Guard. Additionally, the outboard motor was recovered by Sonoma County Sherriff's deputies at the house of one Jeffrey Crepo at 17827 Santa Rosa Ave, Guerneville, CA.

**Theft and Conversion**

40. MCGETTIGAN began stealing from CANNON as early as Jan 1 2023, when he used his access to CANNON's four storage units storing items from CANNON's time as a licensed general engineering contractor, and ownership of a telecommunications company, to secretly and without CANNON'S permission remove items of hers and placed them into storage units MCGETTIGAN rented. It is believed that MCGETTINAN has stolen over $350,000 worth of computer hardware from PLAINTIFF, including but not limited to, Dell servers, routers, commercial power and data and audio cables, electronics, electrical switchgear, and other components an items including an inflatable waterslide, commercial pressure washers, Multiquip 7000VA Diesel Generators, and UPS power backup system.

41. In addition, MCGETTIGAN also stole PLAINTIFF's heater during the winter during

---

[5] https://www.ktvu.com/news/multiple-boats-on-fire-at-south-san-francisco-marina

an act of piracy at sea, leaving her to suffer in the cold.

42. During his attack and attempted murder by strangulation of CANNON, MCGETTIGAN also attempted to smash CANNON's solar panels, knowing they provided essential electrical power to keep her boat afloat and the pumps running to keep the hull free of water that was constantly trickling in, because, as we also recently discovered, he had crashed the boat in Vallejo when he stole it without CANNON's permission and lied about that as well. During the crash, he cracked the vessel's transom, causing a large water leak which he temporarily patched using household spray foam, a sub-standard unseaworthy repair.

43. PLAINTIFF is informed and believes and based thereon alleges that MCGETTIGAN did this all to pay for his drugs, enrich himself, his and others he favored partnered with or conspired with and their businesses. MCGETTIGAN stores these items in his storage units, including without limitation his mother's home and at a container on Treasure Island and other locations, and he installs stolen compatible items in his customer's and partner's and co conspirators' businesses in order to enrich them and so that he can pocket a fee for the stolen items. His partners, customers, and co-conspirators are aware the items are stolen but they do not care and accept the use and benefit of them. They include without limitation defendants BARBARA JANE, KEZAR PUB, MAD DOG IN THE FOG, HACKETT, DEAL, JERRY'S FAIRIES, CAT CLUB, F8 SF and others.

**Defamation, False Light**

44. MCGETTIGAN, among other defendants, defamed and continues to defame CANNON, including without limitation spreading lies that she is a man, is somehow responsible for the Ghost Ship fire[6] even though she never worked there and other outright falsities. Various other co-defendants repeat these and other false accusations against CANNON and use them to discriminate against CANNON in violation of her constitutional rights. PLAINTIFF believes that all named defendants do this to CANNON as a result of their continued relationship and dealings with MCGETTIGAN and because she is a lesbian intersex cisgender woman, is an easy target and scapegoat, and they find it to their advantage

[6] The Ghost ship fire was caused by arson, and Lady Benjamin had nothing at all to do it with it in any way.

to discriminate against her upon such basis as it enhances their status in their social circles.

45. Other false allegations exist and will be established and proven through discovery.

**Breach of Contract**

46. Within four years last past, Defendants KEZAR PUB and HACKETT, at the request of DEFENDANT MCGETTIGAN, signed a contract with CANNON to provide internet services to the business. CANNON in fact did provide internet services to the business, and they were deemed acceptable. KEZAR PUB never paid its bills, even after over 40 phone calls and 2 letters from attorneys advising of the debit and warning of litigation. At the time of this writing, the past-due balance totals over $48,288.56 PLAINTIFF is informed and believes and based thereon alleges that this unpaid obligation of these defendants is a further basis for them willingly discriminating and acting in concert with MCGETTIGAN against CANNON.

47. In addition, Defendant KEZAR PUB has refused to return and thus converted over $35,000 in CANNON's property in the form of internet routers, receivers, antennas, base stations, power distribution, and management equipment. On information and belief, defendant MCGETTIGAN also directed and conspired with KEZAR PUB and HACKETT in order to effectuate the nonpayment and conversion.

**MCGETTIGAN's Sabotage of Other Vessels**

48. Defendant MCGETTIGAN has been responsible for the sabotage and attempted sinking of other vessels in the San Francisco Bay, including without limitation an incident in which the US Coast Guard had to rescue five individuals with Air Station MH-65 Dolphin helicopters[7]. The Captain sustained multiple broken ribs, and the boat later ran aground in San Francisco, causing hundreds of thousands of dollars in cleanup expenses and pollution risks. On information and belief, MCGETTIGAN sabotaged the starter on the boat so that the main engine would not run when restart was attempted out at sea, and that is exactly what happened to the subject vessel.

**MCGETTIGAN's Thefts of Other Vehicles**

49. MCGETTIGAN has been involved in at least two other vehicle thefts that we know of

---

[7] https://www.news.uscg.mil/Press-Releases/Article/3920378/coast-guard-san-francisco-fire-department-rescue-5-boaters-near-ocean-beach/

so far, including an infamous incident in which he allegedly stole two motorcycles with tracking devices and was tracked down near where he attacked CANNON's boats – with the stolen motorcycles in the bed of his red Toyota Tacoma truck. This incident can be seen at https://www.cbsnews.com/sanfrancisco/news/stolen-motorcycles-san-mateo-tracking-device-arrests/

**Harassment**

50. On or about Feb 14, 2025, defendant MAUPIN ejected CANNON from defendant CAT CLUB's premises while she was on a Valentine's Day date with another woman, and refused to give any reason. CANNON is informed and believes and based thereon alleges that the reason was encouragement by and attempt to ingratiate himself further with MCGETTIGAN by discrimination due to CANNON being a lesbian intersex cisgender woman, at the direction of defendant MCGETTIGAN.

51. At various unknown times, Defendants CAT CLUB and F8, acting thorough their owners or employees, have both spread rumors and other lies about CANNON including without limitation that CANNON is really a man, in effort to discriminate against her and harm her reputation and that she was somehow responsible for an arson fire by doing electrical work to a building a quarter mile to the east that did not burn. These rumors, statements and innuendos are all false, and pretextual. The real reason and purpose was an intent by these defendants, at the direction of MCGETTIGAN, to discriminate and isolate CANNON due to CANNON being a lesbian intersex cisgender woman, at the direction and in support of defendant MCGETTIGAN.

52. Numerous DOES are involved in this discrimination and harassment campaign, and we will require discovery to fully identify them and the extent of the campaign.

**Theft of Documents**

53. On or about September 1, 2023, MCGETTIGAN illegally boarded CANNON's prized vessel, The Gatsby, and stole the signed Department of Homeland Security title transfer documents including bill of sale and title transfer forms as well as irreplicable documentation, brochures, pictures and other documentation of the historic 1964 vessel, the last one of her kind remaining, the vessel "The Gatsby", formerly known as the "Ida Louise".

54. As a result of the foregoing actions, which are on-going, CANNON has, *inter alia,* suffered and continues to suffer great harm and substantial damage, including but not limited

to: her boats have been immobilized and damaged extensively such that they require full out-of-water restoration efforts, her life has been endangered, her business and personal lives devastated, her income lost, entry denied, dated disrupted, direct and indirect financial damages from the thefts and required replacements, damage to her reputation and future income generating opportunities, and she has also experienced permanent nerve damage in her arms as a result of the September 19, 2023 assault, battery and attempted murder.

**FIRST CAUISE OF ACTION**
**FOR CONSPIRACY**
**(Against All Defendants)**

55. PLAINTIFF refers to and incorporates as though here set forth fully each of the preceding paragraphs set forth above.

56. All defendants deliberately and intentionally partnered, collaborated, and conspired with, or otherwise acted in concert with a known thief, domestic abuser, drug dealer and addict, and violent armed robber and pirate and others. Defendants, each of them, acted with the intention to gain financially and/or materially in violation of US law and took steps in furtherance including without limitation accepting stolen property, allowing stolen property to be stored in their homes, vehicles, businesses, storage lockers, or other places and/or into the hands of un-named 3rd parties.

57. The other Defendants, and each of them, collaborated with MCGETTIGAN to commit the other causes of action in this complaint including without limitation receiving stolen property, theft, vandalism, violations of the Unruh civil rights act, and defamation/false-light.

58. By reason of the foregoing acts, omissions, PLAINTIFF was harmed.

59. In committing the acts and/or omissions alleged, DEFENDANTS, and each of them, have been guilty of malice, fraud, or oppression and, therefore, PLAINTIFF seeks an award of punitive damages against DEFENDANTS, and each of them, according to proof.

60. PLAINTIFF has been damaged in an amount to be established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**SECOND CAUISE OF ACTION**
**FOR BATTERY and ATTEMPTED MURDER**

**(Against MCGETTIGAN)**

61. PLAINTIFF refers to and incorporates as though here set forth fully each of the preceding paragraphs set forth above.

62. At all relevant times, PLAINTIFF was an approximately 130-pound woman, innocently asleep aboard her USCG documented vessel at sea.

63. At all relevant times, defendant MCGETTIGAN was a pirate engaged in an illegal midnight boarding of a USCG documented and United States flagged vessel, a young and fit man on drugs, and a domestic abuser currently in commission of physical domestic abuse of his boyfriend.

64. Defendant MCGETTIGAN touched, grabbed, pushed, tackled, and choked PLAINTIFF with the intent to harm or kill PLAINTIFF, as stated above. In addition, Defendant MCGETTIGAN tore PLAINTIFFs cell phone from her hands and attempted to destroy it while she was calling 9-11 for help.

65. PLAINTIFF did not consent to the touching, grabbing, pushing, tackling, choking, or murder of PLAINTIFF, nor did she consent to have her electronic device ripped from her hands and vandalized with the intention of preventing her from calling 9-11.

66. PLAINTIFF was harmed by MCGETTIGAN's conduct herein above alleged.

67. The acts of Defendants, and each of them, caused PLAINTIFF to suffer harm and economic damages, for the cost of treatment, loss of business and personal income, and has suffered permanent disability.

68. PLAINTIFF has been damaged in an amount to be established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

69. In committing the acts and/or omissions alleged, MCGETTIGAN has been guilty of malice, fraud, or oppression. PLAINTIFF seeks an award of punitive damages against DEFENDANT MCGETTIGAN, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**THIRD CAUISE OF ACTION**
**FOR ASSAULT**
**(Against MCGETTIGAN)**

70. PLAINTIFF refers to and incorporates as though here set forth fully each of the preceding paragraphs set forth above.

71. At all relevant times, PLAINTIFF was a 130 lb woman, innocently asleep aboard her USCG documented vessel at sea.

72. MCGETTIGAN acted, intending to cause harmful or offensive contact against PLAINTIFF.

73. PLAINTIFF reasonably believed that she was about to be violently touched in a harmful or offensive manner.

74. PLAINTIFF did not consent to said DEFENDANT'S conduct.

75. The acts of MCGETTIGAN alleged hereinabove directly and proximately caused PLAINTIFF to suffer harm and economic damages, for the cost of treatment, loss of business and personal income, and has suffered permanent disability.

76. PLAINTIFF has been damaged in an amount to be established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

77. In committing the acts and/or omissions alleged, MCGETTIGAN has been guilty of malice, fraud, or oppression and, therefore, PLAINTIFF seeks an award of punitive damages in a sum of not less than two times special damages against MCGETTIGAN, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**FOURTH CAUISE OF ACTION**
**FOR FALSE IMPRISIONMENT**
**(Against MCGETTIGAN)**

78. PLAINTIFF refers to and incorporates as though here set forth fully each of the preceding paragraphs set forth above.

79. At all relevant times, PLAINTIFF was an approximately 130-pound woman, innocently asleep aboard her USCG documented vessel at sea.

80. PLAINTIFF was wrongfully restrained, confined, and/or detained by MCGETTIGAN.

81. MCGETTIGAN intentionally deprived PLAINTIFF of her freedom of movement by use of physical force.

82. The restraint, confinement, and/or detention prevented PLAINTIFF from physically

getting up and fleeing for her life as she was being pummeled and having her head smashed in by MCGETTIGAN, who was trying to kill her. She was unable to move for more than 10 minutes during the attack, without the ability to move anywhere else as she was pinned down with his entire weight on her and his hands wrapped around her arms.

83. PLAINTIFF did not consent to the restraint, confinement, and/or detention.

84. PLAINTIFF was actually harmed and MCGETTIGAN's conduct was a direct and substantial cause of PLAINTIFF's harm.

85. MCGETTIGAN acted, intending to cause harmful or offensive contact against PLAINTIFF.

86. The acts of MCGETTIGAN caused PLAINTIFF to suffer harm and economic damages, for the cost of treatment, loss of business and personal income, and has suffered permanent disability.

87. PLAINTIFF has been damaged in an amount to be established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

88. In committing the acts and/or omissions alleged, MCGETTIGAN has been guilty of malice, fraud, or oppression and, therefore, PLAINTIFF seeks an award of punitive damages in a sum of not less than two times special damages, against DEFENDANTS, and each of them, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**FIFTH CAUISE OF ACTION**
**FOR PIRACY AT SEA – Article 101 of 1982 UNCLOS, 18 U.S. Code § 1651**
**(Against Defendants MCGETTIGAN, BARBARA JANE, DEAL, and JERRY's FAIRIES and DOES 1-100)**

89. PLAINTIFF refers to and incorporates as though here set forth fully each of the preceding paragraphs set forth above.

90. At all relevant times, PLAINTIFF was a 130 pound woman, innocently asleep aboard her USCG documented and United States flagged vessel at sea.

91. MCGETTIGAN illegally boarded a United States flagged vessel at sea, with the intention to commit violence, detention, or an act of depredation in violation of Article 101 of

1982 UNCLOS, and 18 U.S. Code § 1651[8] and others. This is a serious crime penalty for which conviction is imprisonment for *life*.

92. MCGETTIGAN did in-fact commit violence against the ship's crew, including her captain, PLAINTIFF in this action.

93. MCGETTIGAN boarded the US flagged vessel with the intent to kill or maim PLAINTIFF and later did in-fact attempt to kill PLAINTIFF by strangulation.

a. MCGETTIGAN also later boarded the US flagged vessel to kill or maim PLAINTIFF, and later did in-fact attempt to kill PLAINTIFF by cutting her anchor lines, cutting her electrical cables, and shorting our the vessel's

---

[8] 18 USC §1651. Piracy under law of nations:

Whoever, on the high seas, commits the crime of piracy as defined by the law of nations, and is afterwards brought into or found in the United States, shall be imprisoned for life.

18 USC §1654. Arming or serving on privateers

Whoever, being a citizen of the United States, without the limits thereof, fits out and arms, or attempts to fit out and arm or is concerned in furnishing, fitting out, or arming any private vessel of war or privateer, with intent that such vessel shall be employed to cruise or commit hostilities upon the citizens of the United States or their property; or

Whoever takes the command of or enters on board of any such vessel with such intent; or

Whoever purchases any interest in any such vessel with a view to share in the profits thereof—

Shall be fined under this title or imprisoned not more than ten years, or both.

18 USC §1657. Corruption of seamen and confederating with pirates

Whoever attempts to corrupt any commander, master, officer, or mariner to yield up or to run away with any vessel, or any goods, wares, or merchandise, or to turn pirate or to go over to or confederate with pirates, or in any wise to trade with any pirate, knowing him to be such; or

Whoever furnishes such pirate with any ammunition, stores, or provisions of any kind; or

Whoever fits out any vessel knowingly and, with a design to trade with, supply, or correspond with any pirate or robber upon the seas; or

Whoever consults, combines, confederates, or corresponds with any pirate or robber upon the seas, knowing him to be guilty of any piracy or robbery; or

Whoever, being a seaman, confines the master of any vessel—Shall be fined under this title or imprisoned not more than three years, or both.

electrical system, such that the vessel would sink with all hands aboard.

94. Defendants BARBARA JANE, DEAL and J ERRY's FAIRIES aided, abetted and gave materiel, comfort, armed or fitted out, or was involved in furnishing, fitting out, or arming the pirate vessels used with intent that such vessel shall be employed to cruise or commit hostilities, including without limitation "DRAGON LADY" and "HAMCAT" including without limitation owning them, paying for their necessaries including wharfage and fuel and food and water and repairs, crewing them, supervising their use, or otherwise.

100. Defendants DEAL and JERRY's FAIRIES in fact owned or own the vessels fitted out, or was concerned in furnishing, fitting out, or arming the pirate vessels used with intent that such vessel shall be employed to cruise or commit hostilities, including without limitation "DRAGON LADY".

101. Defendants BARBARA JANE, DEAL and JERRY's FAIRIES traded with MCGETTIGAN, knowing him to be a pirate. They furnished ammunition, stores, provisions of any kind; or Fitted out any vessel knowingly, and with a design to trade with, supply, or correspond with any pirate or robber on the high seas in the form of MCGETTIGAN.

102. PLAINTIFF was actually harmed and DEFENDANTS' conduct was a substantial factor in causing PLAINTIFF's harm.

103. DEFENDANTS, and each of them, acted, indenting to cause harmful or offensive contact against PLAINTIFF.

104. The acts of Defendants, and each of them, caused PLAINTIFF to suffer harm and economic damages, for the cost of treatment, loss of business and personal income, and has suffered permanent disability.

105. PLAINTIFF has been damaged in an amount to be established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

106. In committing the acts and/or omissions alleged, DEFENDANTS, and each of them, have been guilty of malice, fraud, or oppression and, therefore, PLAINTIFF seeks an award of punitive damages against DEFENDANTS, and each of them, in a sum of not less than two times special damages, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**SIXTH CAUISE OF ACTION**
**FOR VEHICLE THEFT, VANDALISM**

**(Against Defendants MCGETTIGAN, BARBARA JANE, DEAL, and JERRY's FAIRIES and DOES 1-100)**

107. PLAINTIFF refers to and incorporates as though here set forth fully each of the preceding paragraphs set forth above.

108. At all relevant times, PLAINTIFF was an approximately 130 pound woman, innocently asleep aboard her USCG documented and United States flagged vessel "GORBIER" at sea.

109. MCGETTIGAN illegally boarded a United States flagged vessel at sea, with the intention to commit violence, theft, and vandalism.

110. MCGETTIGAN did in-fact commit violence, theft, and vandalism.

111. MCGETTIGAN stole the 8' tender vessel "GOTBIER II" no less than three separate times as enumerated above, stripped her of valuable parts, and then dumped her hull in the ocean in an act of maritime pollution, attempting to sink her. She was subsequently recovered thanks to the law enforcement team aboard "Gotbier" as well as a multijurisdictional mutual-aid network of other agencies including South San Francisco Police Department, the Sonoma County Sherriff's Department, and the Brisbane Police department, however she had been stripped of any valuable components each time (over $4000 worth in each instance, a felony).

113. Additionally, MCGETTIGAN illegally boarded a US flagged vessel "Gotbier" at anchor and cut her anchor lines, her electrical lines, and sabotaged and shorted her electrical system in efforts to scuttle her such that she would sink with all hands aboard in a matter of hours.

114. Additionally, MCGETTIGAN stole the documentation from vessel "Gotbier".

115. MCGETTIGAN used vessels and supplies furnished by defendants BARBARA JANE, DEAL, and JERRY's FAIRIES to effectuate the thefts and vandalism.

116. MCGETTIGAN did in-fact commit theft against the ship's crew, including her captain, PLAINTIFF in this action.

117. PLAINTIFF was actually harmed and DEFENDANTS' conduct was a substantial in causing PLAINTIFF's harm.

118. The acts of Defendants, and each of them, caused PLAINTIFF to suffer harm and economic damages, for the cost of treatment, loss of business and personal income, and has suffered permanent disability. 119. PLAINTIFF has been damaged in an amount to be

established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

120. In committing the acts and/or omissions alleged, DEFENDANTS, and each of them, have been guilty of malice, fraud, or oppression and, therefore, PLAINTIFF seeks an award of punitive damages against DEFENDANTS, and each of them, in a sum of not less than two times the actual damages PLAINTIFF sustained by reason of DEFENDANTS' acts and omissions, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**SEVENTH CAUISE OF ACTION**
**FOR CONVERSION OF PROPERTY**
**(Against Defendants MCGETTIGAN, BARBARA JANE, DEAL, and JERRY's FAIRIES, CAT CLUB, F8 SF, CYRIL HACKETT, KEZAR PUB, MAD DOG IN THE FOG, and DOES 1-100)**

121. PLAINTIFF refers to and incorporates as though here set forth fully each of the preceding paragraphs set forth above.

122. MCGETTIGAN did in fact commit violence, theft, and vandalism of PLAINTIFF's vessel fleet, stealing many vessels and without limitation motors, batteries, weights, anchors, lines, PFDs, paddles, and other necessaries.

123. MCGETTIGAN also stole or converted no less than three storage units worth of PLAINTIFF's LARGE collection of, without limitation, tools, materials, electronics, computers, monitors, generators, cables and other material from her vast experience as an engineering contractor, telecom company owner, EV battery company founder, and other ventures as well as her personal effects including but not limited to a waterslide.

124. MCGETTIGAN worked in concert with BARBARA JANE to store the stolen and converted property and use it in home and business improvement projects at various locations including their shared home at 140 Paraiso Pl, San Francisco CA and Public Storage at 80 S Spruce Ave, South San Francisco, a second Public Storage space under a freeway in or near San Francisco, and another container storage yard on Treasure Island, San Francisco.

125. MCGETTIGAN worked in concert with DEAL, JERRY's FAIRIES, CAT CLUB, F8 SF, CYRIL HACKETT, KEZAR PUB, MAD DOG IN THE FOG SF, and other DOES to store the stolen property and use it in home and business improvement projects at various locations including their business locations, their storage locations, and their homes.

126. PLAINTIFF suffered actual harm and DEFENDANTS' conduct was a substantial factor in causing PLAINTIFF's harm.

127. The acts of Defendants, and each of them, caused PLAINTIFF to suffer harm and economic damages, for the cost of treatment, loss of business and personal income, and have suffered permanent disability.

128. PLAINTIFF has been damaged in an amount to be established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

129. In committing the acts and/or omissions alleged, DEFENDANTS, and each of them, have been guilty of malice, fraud, or oppression and, therefore, PLAINTIFF seeks an award of punitive damages against DEFENDANTS, and each of them, in a sum at least two times the established actual damages they caused PLAINTIFF, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**EIGHTH CAUSE OF ACTION**
**FOR DEFAMATION OF CHARACTER, FALSE LIGHT, DOXXING**
**(Against ALL Defendants and DOES 1-100)**

130. DEFENDNATS claim and have claimed, falsely, that PLAINTIFF is a man, that she did electrical work that caused the Ghost Ship arson fire and that she is a predator of some kind. All of these things are false and have caused PLAINTIFF to fear for her life and lose income, lose business, lose personal relationships and subjected her to ridicule and shame she does not deserve. Defendants spread these lies, knowing of their falsity, to 3rd persons. The lies caused actual harm

131. PLAINTIFF'S dates with other women have been stalked, interfered with, and her good name intentionally soiled such as to sabotage her relationships.

132. DEFENDANTS furthermore disclosed information that showed PLAINTIFF in a false light, the false light would be highly offensive to a reasonable person, DEFENDANTS knew the disclosure would create a false impression about PLAINTIFF or acted with reckless disregard for the truth. DEFENDANTS were negligent in determining the truth of the information or whether a false impression would be created by the disclosure.

133. DEFENDANTS, and each of them, made false, fraudulent and derogatory comments about PLAINTIFF and doxed her to others within their respective social circles, causing

PLAINTIFF to suffer shame, humiliation, depression and, because of the anticipated reprisals of those she has observed seeking revenge, she reasonably feared for her life. In doing the acts herein described, DEFENDANTS were negligent and careless and failed to determine the truth of the matters they asserted against PLAINTIFF or whether a false would create a false, negative or harmful characterization to others to whom they imparted the false and .

134. DEFENDANTS' conduct was a substantial factor in causing cause harm to PLAINTIFF.

135. The acts of DEFENDANTS, and each of them, caused PLAINTIFF to suffer harm and economic damages, for the cost of treatment, loss of business and personal income, and has suffered permanent disability. By reason thereof, PLAINTIFF has been damaged in a sum to be proven at trial but within the minimum jurisdiction of this court.

136. In committing the acts and/or omissions alleged, DEFENDANTS, and each of them, have been guilty of malice, fraud, or oppression and, therefore, PLAINTIFF seeks an award of punitive damages against DEFENDANTS, and each of them, in a sum of not less than two times the actual damages suffered by PLAINTIFF, according to proof.

137. PLAINTIFF has been damaged in an amount to be established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**NINTH CAUSE OF ACTION**
**FOR NEGLIGENCE**
**(Against All Defendants)**

138. PLAINTIFF refers to and incorporates as though here set forth fully each of the preceding paragraphs set forth above.

139. All DEFENDANTS acted with negligence and carelessness insofar as their association with MCGETTIGAN, a known drug dealer, distributor, and abuser in the form of defendant MCGETTIGAN. By hiring, partnering, engaging, encouraging, collaborating, providing materiel support and resources, or otherwise associating with a known methamphetamine dealer distributor and addict, a known vehicle thief, a known pirate and domestic abuser, all DEFENDANTS negligently and carelessly exposed themselves and their businesses to and are responsible for the consequences of MCGETTIGAN's multitude of

criminal and civil liabilities and the harm he has caused PLAINTIFF for those matters in which they provided support of MCGETTIGAN as herein alleged..

140. In addition to the above, and without limitation thereof, Defendants DEAL and JERRY'S FAIRIES both negligently, carelessly and/or intentionally allowed MCGETTIGAN to use their tender "Dragon Lady" to carry out multiple attacks on PLAINTIFF and her fleet of vessels at sea, including without limitation an attempted sinking and murder of her. DEAL was informed by PLAINTIFF of MCGETTIGAN's prior acts against PLAINTIFF, but continued t and continues to allow MCGETTIGAN to use his vessel and it's tenders to carry out acts of piracy as well as assault and battery and attempted murder at sea.

141. BARBARA JANE has known for years that her son is a drug addict, drug distributor, and drug dealer as she paid for his legal defense for criminal charges stemming from his possession of drugs and drug paraphernalia. DEAL uses the illegal drug Ketamine (a horse tranquilizer) with MCGETTIGAN, and they both engage in operation of vessels while intoxicated.

142. Defendants BYRNE, and SELGRATH administer the MATTHEW MCGETTIGAN TRUST. All of them had knowledge, without limitation, of MCGETTIGAN's repeated violent crimes, his domestic abuse, his abuse and battery of women, his activities violating the Piracy Act and other law, his vehicle theft history, as well as his criminal charges and other bad acts. Together, they conspired to arm, outfit, provide for, trade, transact with, and otherwise finance the piracy of vessels in the Waters of the United States.

143. The named defendants, and each of them, arm, furnish, outfit, support, and otherwise collaborate with MCGETTIGAN in his multitude of thefts, attacks, attempted murders, piracy at sea, conversion, and other crimes and torts. They did so negligently and carelessly.

144. By reason of the foregoing negligent and careless acts of said defendants, and each of them as aforesaid, PLAINTIFF was harmed.

145. DEFENDANTS' conduct was substantial factor in causing harm to PLAINTIFF.

146. The acts of said Defendants, and each of them, caused PLAINTIFF to suffer harm and economic damages, for the cost of medical treatment, loss of business and personal income, and PLAAINTIFF has suffered personal injury and permanent disability in an amount to be established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**TENTH CAUSE OF ACTION**
**FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Against All Defendants)**

147. PLAINTIFF refers to and incorporates as though here set forth fully each of the preceding paragraphs set forth above.

148. DEFENDANTS, and each of them, owed PLAINTIFF a duty of care to not arm, furnish, outfit, support, finance, trade with, or otherwise enable pirates. MCGETTIGAN is and has acted as a pirate.

149. DEFENDANTS negligently armed, furnished, outfitted, supported, financed, traded with, or otherwise enabled pirates including MCGETTIGAN.

150. Those pirates attacked PLAINTIFF and PLAIINTIFF's vessels, causing her serious physical injury and loss of income, business, and peace.

151. Furthermore, DEFENDANTS F8 SF, CAT CLUB, and others had a duty not to allow their staff to spread lies about PLAINTIFF. They negligently breached that duty.

152. All defendants acted with negligence insofar as to their association with a known drug dealer, distributor, and abuser in the form of defendant MCGETTIGAN. By hiring, partnering, engaging, collaborating, providing material and resources, or otherwise associating with a known methamphetamine dealer distributor and addict, a known vehicle thief, a known pirate and domestic abuser, all defendants negligently and carelessly exposed themselves and their businesses to the direct consequences of MCGETTIGAN's multitude of criminal and civil liabilities.

153. In addition to the above, and without limitation, Defendants DEAL and JERRY'S FAIRIES both negligently allowed MCGETTIGAN to use their tender "Dragon Lady" to carry out multiple attacks on PLAINTIFF and her fleet of vessels at sea, including without limitation an attempted sinking and murder of her. DEAL was informed b PLAINTIFF of MCGETTIGAN's prior acts against PLAINTIFF but continued to allow and continues to allow him to use his vessel and it's tenders to carry out acts of piracy as well as assault and battery , destruction and mayhem and attempted murder at sea.

154. BARBARA JANE has known for years that her son is a drug addict, drug distributor, and drug dealer. (she paid for his legal defense for criminal charges stemming from his

possession of drugs and drug paraphernalia). DEAL does the illegal drug Ketamine (a horse tranquilizer) with MCGETTIGAN, and they both engage in operation of vessels while intoxicated and operation of vessels on the seas and waterways of the United States in a dangerous manner endangering the lives of other mariners.

155. The DEFENDANTS arm, furnish, outfit, support, and otherwise collaborate with MCGETTIGAN in his multitude of thefts, attacks, attempted murders, piracy at sea, conversion, and other crimes and torts. They do so negligently.

156 Because of the foregoing negligent and careless acts, PLAINTIFF was harmed.

157. DEFENDANTS' conduct was a substantial factor in causing cause harm to PLAINTIFF.

158.The acts of said defendants, and each of them, caused PLAINTIFF to suffer harm and economic damages, for the cost of treatment, loss of business and personal income, and has suffered permanent disability.

159. PLAINTIFF has been damaged in an amount to be established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**ELEVENTH CAUSE OF ACTION**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against All Defendants)**

160. PLAINTIFF refers to and incorporates as though here set forth fully each of the preceding paragraphs set forth above.

161. DEFENDANTS, and each of them, knew it was wrong to arm, furnish, outfit, support, finance, trade with, or otherwise enable MCGETTIGAN because, among other things, PLAINTIFF had informed them of the multiple bad acts MCGETTIGAN had done to PLAINTIFF in the past and in detail.

162. DEFENDANTS, and each of them in their own way, intentionally armed, furnished, outfitted, supported, financed, traded with, supplied materiel and resources to or otherwise enabled pirates including MCGETTIGAN.

163. Those pirates attacked PLAINTIFF and PLAIINTIFF's vessels, causing her serious

physical injury and loss of income and property, business, and peace.

164. Additionally, DEFENDANTS F8 SF, CAT CLUB, and others had a duty not to allow their staff to spread lies about PLAINTIFF. They intentionally breached that duty.

165. All defendants intentionally associated with MCGETTIGAN, a known drug dealer, distributor, and abuser. By hiring, partnering, engaging, collaborating, providing materiel and resources or otherwise associating with a known methamphetamine dealer, distributor and addict, a known vehicle thief, a known pirate and domestic abuser, all defendants exposed themselves and their businesses to the direct consequences of MCGETTIGAN's multitude of criminal and civil liabilities.

166. Further still, and without limitation, Defendants DEAL and JERRY'S FAIRIES both intentionally allowed MCGETTIGAN to use their tender "Dragon Lady" to carry out multiple attacks on PLAINTIFF and her fleet of vessels at sea, including without limitation an attempted sinking and murder of PLAINTIFF. DEAL was informed of MCGETTIGAN's prior acts against PLAINTIFF by PLAINTIFF but continued to allow and continues to allow MCGETTIGAN to use his vessel and it's tenders to carry out acts of piracy, destruction and mayhem as well as assault and battery and attempted murder at sea against PLAINTIFF.

167. BARBARA JANE has known for years that her son is a drug addict, drug distributor, and drug dealer. (she paid for his legal defense for criminal charges stemming from his possession of drugs and drug paraphernalia). DEAL does the illegal drug Ketamine (a horse tranquilizer) with MCGETTIGAN, and they both engage in operation of vessels while intoxicated and operation of vessels on the seas and waterways of the United States in a dangerous manner endangering the lives of other mariners.

168. The said defendants, and each of them, have in the past and continue to arm, furnish, outfit, support, and otherwise collaborate with MCGETTIGAN in his multitude of thefts, attacks, attempted murders, piracy at sea, conversion, and other crimes and torts against PLAINTIFFs.

169. Because of the foregoing negligent and careless acts, PLAINTIFF was harmed.

170. DEFENDANTS' conduct was a substantial factor in causing harm to PLAINTIFF.

171. The acts of Defendants, and each of them, caused PLAINTIFF to suffer harm and economic damages, for the cost of treatment, loss of business and personal income, and has suffered permanent disability in an amount to be established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

172. In committing the acts and/or omissions alleged, DEFENDANTS, and each of them, have been guilty of malice, fraud, or oppression and, therefore, PLAINTIFF seeks an award of punitive damages against DEFENDANTS, and each of them, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**TWELFTH CAUISE OF ACTION**
**UNRUH CIVIL RIGHTS ACT CAL. CIV. CODE § 51, et seq., SEXUAL HARASSMENT.**
**(Against All Defendants)**

173. PLAINTIFF refers to and incorporates as though here set forth fully each of the preceding paragraphs set forth above.

174. The Unruh Act, Cal. Civ. Code § 51, guarantees all people within the jurisdiction of California, no matter what their disabilities, the full and equal accommodations, advantages, facilities, privileges and services of all business establishments of every kind whatsoever.

175. Through their businesses, Defendants F8 SF, CAT CLUB, JERRY'S FAIRIES, KEZAR PUB, MAD DOG IN THE FOG, and others offer services to the public.

176. Despite being on notice of MCGETTIGAN's multiple drug convictions, his drug use and dealing, and his propensity for violence, all defendants engaged him as their agent.

177. MCGETTIGAN then proceeded to attempt to murder PLAINTIFF because she is an intersex lesbian woman.

178. MCGETTIGAN then proceeded to steal from PLAINTIFF because she is an intersex lesbian woman.

179. MCGETTIGAN, DEAL, BARBARA JANE, F8 SF, CAT CLUB, acting through its owners, and others then proceeded to defame PLAINTIFF because she is an intersex lesbian woman.

180. MCGETTIGAN, F8 SF, CAT CLUB, acting through its owners, and others then proceeded to physically ban or bar PLAINTIFF from their public establishments (night clubs) because she is an intersex lesbian woman, and act of unlawful discrimination.

181 DEFENDANTS' actions were and are in violation of the Unruh Act.

182, By reason of the foregoing acts, PLAINTIFF was harmed.

183. PLAINTIF's are thus entitled to injunctive relief remedying the discrimination,

pursuant to Cal. Civ. Code § 52

184. Cal. Civ. Code § 52 further entitles PLAINTIFF to reasonable attorneys' fees and costs and treble damages.

185. DEFENDANTS conduct was a substantial factor in causing harm to PLAINTIFF.

186. The acts of Defendants, and each of them, caused PLAINTIFF to suffer harm and economic damages, for the cost of treatment, loss of business and personal income, and has suffered permanent disability by reason of which PLAINTIFF has been damaged in an amount to be established at the trial hereof but in a sum of not less than $10,000,000, according to proof.

187. In committing the acts and/or omissions herein alleged, DEFENDANTS, and each of them, are guilty of malice, fraud, or oppression and, PLAINTIFF is entitled to an award of punitive damages against DEFENDANTS, and each of them, in an amount at least two times the actual or special damages incurred by PLAINTIFF, according to proof.

WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**PRAYER**

1. Award of general and special damages, in the amount of not less than $10,000,000 according to proof, for each cause of action.

2. Award of compensatory damages for injury to person consisting of humiliation, mental anguish , obloquy, and emotional distress, according to proof.

3. Award of punitive and exemplary damages according to proof against DEFENDANTS, and each of them of not less than two times the amount of PLAINTIFF's special damages, on each cause of action based on intentional torts, according to proof.

4. Award of pre-judgment interest on the number of losses incurred according to proof at the prevailing legal rate;

5. Award of compensatory damages, according to proof, as to the breach of contract claim.

6. Award for costs and reasonable attorney's fees as provided by law as provided .

7. Injunctive relief in the form of an order enjoining similar further conduct as described herein, returning or replacing stolen property and providing for liquidated damages in event of such future conduct, as he has a long history of repeat violations .

8. For such other and further relief, which the court deems just and proper.

LAW OFFICES OF PAUL. J. STEINER

By: ______________________

PAUL J. STEINER
Attorneys for PLAINTIFF
LADY BENJAMIN P.D. CANNON

**DEMAND FOR TRIAL BY JURY**

PLAINTIFF demands a trial by jury on all issues so triable.

LAW OFFICES OF PAUL J. STEINER

By: ______________________

PAUL J. STEINER
Attorneys for PLAINTIFF
LADY BENJAMIN P.D.. CANNON