PAUL J. STEINER [SBN 41117]
LAW OFFICES OF PAUL J. STEINER
580 California Street, Suite 1200
San Francisco, CA 94104
Telephone:  415-981-6100
Facsimile:  415-984-0950
Email: paul@sfpaulaw.com

Attorneys for PLAINTIFF
LADY BENJAMIN P.D. CANNON, A.S.C.E.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LADY BENJAMIN P.D. CANNON, A.S.C.E.<br><br>PLAINTIFF,<br><br>vs.<br><br>MATTHEW MARTIN MCGETTIGAN, an individual, BARBARA JANE MCGETTIGAN, an individual. JERRY DEAL, an individual.<br>CYRIL HACKETT, an individual. RANDY MAUPIN, an individual. PATRICIA A BYRNE, an individual. JOHN SELGRATH, an individual.<br>THE TRUST FOR THE BENEFIT OF MATTHEW MARTIAN MCGETTIGAN, a trust, JERRY'S FAERIES, LLC, a California Limited Liability Company. KEZAR PUB, LLC, a California Limited Liability Company. CAT CLUB, a California company or partnership of undetermined type, F8 SF, a California company or partnership of undetermined type, MAD DOG IN THE FOG, a California company or partnership of undetermined type,<br>DOES ONE through DOE 100, inclusive,<br><br>DEFENDANTS. | Case No.: 3:25-cv-07834-RFL<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS KEZAR PUB, LLC AND MAD DOG IN THE FOG, INC.'S MOTION TO DISMISS<br><br>DATE: May 5, 2026<br>TIME: 10:00 a.m.<br>DEPT.: 15<br>JUDGE: Hon. Rita F. Lin |

PLAINTIFF'S OPPOSITION TO DEFENDANTS KEZAR PUB, LLC AND MAD DOG IN THE FOG, INC.'S
MOTION TO DISMISS

**INTRODUCTION**

Plaintiff Lady Benjamin P.D. Cannon, A.S.C.E. ("Plaintiff") submits this opposition to the Motion to Dismiss filed by Defendants Kezar Pub, LLC ("Kezar Pub") and Mad Dog in the Fog, Inc. ("Mad Dog") (collectively, "Moving Defendants"). Moving Defendants' motion is a transparent attempt to evade accountability for their role in a malicious conspiracy by mischaracterizing Plaintiff's claims and ignoring the specific factual allegations pleaded against them.

The motion fails for three independent reasons. First, the Complaint properly pleads federal question jurisdiction. The Fifth Cause of Action for "Piracy at Sea" alleges a quintessential maritime tort arising from violent attacks on Plaintiff's U.S. Coast Guard documented vessel on the navigable waters of the San Francisco Bay. This confers admiralty jurisdiction under 28 U.S.C. § 1333, which is entirely separate from whether the criminal piracy statute, 18 U.S.C. § 1651, creates a private right of action. Second, even if the piracy claim were dismissed, the Court should exercise supplemental jurisdiction over the remaining state-law claims. These claims, including conspiracy, conversion, and breach of contract, arise from the exact same common nucleus of operative fact—namely, the overarching scheme to steal Plaintiff's property, enrich the conspirators (including Moving Defendants), and harm Plaintiff. Third, the Complaint is not vague or conclusory; it alleges specific, plausible facts against Kezar Pub and Mad Dog, including that they knowingly received and stored Plaintiff's stolen property and that Kezar Pub breached a specific contract and converted over $35,000 of Plaintiff's equipment. For these reasons, the motion should be denied in its entirety

**FACTUAL BACKGROUND**

At this stage, the Court must accept all factual allegations in the Complaint as true. The Complaint alleges a horrifying campaign of violence, theft, and

PLAINTIFF'S OPPOSITION TO DEFENDANTS KEZAR PUB, LLC AND MAD DOG IN THE FOG, INC.'S
MOTION TO DISMISS

> **Commented [PS1]:** $350,000? See pg 3 line 21. But then see Pg 4 line 16, maybe the $350K on Pg 4 should be $35K?

harassment perpetrated by Defendant Matthew McGettigan and enabled and furthered by a conspiracy of individuals and businesses, including Moving Defendants.

The conspiracy's tortious conduct includes multiple acts of piracy against Plaintiff's U.S. Coast Guard documented vessel, the "GOTBIER," on the San Francisco Bay. On September 19, 2023, McGettigan illegally boarded the vessel, violently assaulted Plaintiff, attempted to strangle her while stating, "You're going to die, bitch!," and threatened to "come back and cut your [anchor] lines!" (Complaint, ¶¶ 19-23).

McGettigan made good on that threat. On or about November 28, 2024, using a tender vessel launched from the "DRAGON LADY" (a yacht owned by co-conspirators Jerry Deal and Jerry's Faeries, LLC), McGettigan again illegally boarded the "GOTBIER." (Compl., ¶ 29). He proceeded to cut two of the vessel's anchor lines and its electrical power cord, which he placed in the seawater to short out the electrical system in a deliberate attempt to scuttle the vessel with all hands aboard. (Compl., ¶¶ 33-35, 93). These actions constitute acts of piracy under the law of nations. (Compl., ¶¶ 89-94).

A central component of the conspiracy was the theft and conversion of over $350,000 worth of Plaintiff's property, including commercial-grade computer hardware, electronics, and tools from her engineering and telecommunications businesses. (Compl., ¶ 40). The Complaint specifically alleges that McGettigan provided this stolen property to his co-conspirators, who knowingly accepted it. The allegations against Moving Defendants are direct and specific:

- McGettigan "installs stolen compatible items in his customer's and partner's and co-conspirators' businesses in order to enrich them... His partners, customers, and co-conspirators are aware the items are stolen but they do not

3

PLAINTIFF'S OPPOSITION TO DEFENDANTS KEZAR PUB, LLC AND MAD DOG IN THE FOG, INC.'S MOTION TO DISMISS

care and accept the use and benefit of them. They include without limitation defendants... KEZAR PUB, MAD DOG IN THE FOG..." (Compl., ¶ 43).

- Defendant Cyril Hackett, owner of both Kezar Pub and Mad Dog, "knowingly received and converted PLAINTIFF's stolen property." (Compl., ¶ 5).

- The Seventh Cause of Action for Conversion is alleged "[a]gainst Defendants... CYRIL HACKETT, KEZAR PUB, MAD DOG IN THE FOG," alleging they worked in concert with McGettigan "to store the stolen property and use it in... business improvement projects at various locations including their business locations..." (Compl., ¶¶ 121, 125).

- Kezar Pub breached a contract with Plaintiff for internet services, resulting in an unpaid balance of over $48,000. (Compl., ¶ 46).

- Kezar Pub has refused to return and has converted over $35,000 worth of Plaintiff's internet equipment. (Compl., ¶ 47).

These allegations form the basis for the claims against Kezar Pub and Mad Dog for conspiracy, conversion, negligence, and infliction of emotional distress, and against Kezar Pub for breach of contract.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must "accept all factual allegations in the

complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

**ARGUMENT**

**I. THE COMPLAINT STATES A VALID FEDERAL CLAIM FOR PIRACY, CONFERRING ADMIRALTY JURISDICTION.**

Moving Defendants' central argument—that this Court lacks subject matter jurisdiction because 18 U.S.C. § 1651 is a criminal statute that does not create a private right of action—fundamentally misunderstands the basis for federal jurisdiction here. While the Fifth Cause of Action references § 1651 and Article 101 of UNCLOS to define the prohibited conduct, the claim itself sounds in the ancient tort of piracy, a quintessential claim under federal admiralty and maritime jurisdiction. 28 U.S.C. § 1333(1).

Admiralty jurisdiction extends to torts that "(1) 'occurred on navigable water' and (2) bear a 'significant relationship to traditional maritime activity.'" *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1127 (9th Cir. 2009) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995)). Both prongs are easily met here.

The tortious acts occurred on the San Francisco Bay, which is indisputably a navigable waterway. (Compl., ¶¶ 19, 29, 32). The conduct bears a significant relationship to traditional maritime activity. The alleged acts include the illegal boarding of a U.S. Coast Guard documented vessel, assault on its captain, theft of its tender, and a deliberate attempt to scuttle it by cutting anchor and electrical lines. (Compl., ¶¶ 19, 22-23, 29, 33-35, 91-93). This conduct "has a potentially disruptive impact on maritime commerce" and "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime

5

activity." *Grubart*, 513 U.S. at 534. There can be no tort more uniquely maritime than piracy on the high seas or navigable waters.

Because the Fifth Cause of Action alleges a maritime tort, this Court has original jurisdiction under § 1333, regardless of any implied private right of action under the criminal code. Defendants' motion on this ground must be denied.

## II. THE COURT HAS SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS.

Even if the Court were to determine that it should dismiss the federal piracy claim, it has discretion to and should exercise supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367. Supplemental jurisdiction is proper where the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Here, the connection is undeniable. The state-law claims against Moving Defendants for conspiracy, conversion, and negligence are not merely parallel to the piracy claim; they are inextricably intertwined. The Complaint alleges a single, overarching conspiracy in which Mr. McGettigan would violently attack and steal from Plaintiff, and the other co-conspirators, including Kezar Pub and Mad Dog, would benefit by knowingly receiving and using the stolen property. (Compl., ¶¶ 43, 56-57, 125). The theft of Plaintiff's property—effectuated in part through acts of piracy—and the subsequent conversion of that property by Moving Defendants are two sides of the same coin. The breach of contract claim against Kezar Pub is likewise part of this common nucleus, as it is alleged to be "a further basis for them willingly discriminating and acting in concert with MCGETTIGAN against CANNON." (Compl., ¶ 46).

Because all claims arise from the same scheme and course of conduct, they form a single "case or controversy" under Article III. Dismissing the claims against

Kezar Pub and Mad Dog would lead to duplicative litigation in state court, wasting judicial resources and risking inconsistent verdicts. Therefore, the Court should retain supplemental jurisdiction over all claims.

### III. THE COMPLAINT PLEADS SPECIFIC, PLAUSIBLE FACTS AGAINST MOVING DEFENDANTS.

Finally, Moving Defendants' argument that the Complaint contains only vague and conclusory allegations against them is flatly contradicted by the text of the Complaint itself. The pleading standard of *Twombly* and *Iqbal* requires plausible allegations, not a plaintiff's entire case on paper. Plaintiff has met this standard.

The Complaint specifically alleges that:

1. Kezar Pub and Mad Dog knowingly received and used Plaintiff's stolen property. (Compl., ¶¶ 5, 11, 12, 43, 125). This is a factual allegation, not a legal conclusion.

2. Kezar Pub entered into a contract for internet services with Plaintiff and failed to pay, owing over $48,000. (Compl., ¶ 46). This is a specific allegation of breach.

3. Kezar Pub refused to return and converted over $35,000 of Plaintiff's specifically identified internet equipment. (Compl., ¶ 47). This is a specific allegation of conversion.

4. Both Kezar Pub and Mad Dog are alleged to be part of the conspiracy to harm Plaintiff. (Compl., First Cause of Action, ¶¶ 55-60).

These are precisely the kind of factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff has clearly put Moving Defendants on notice of the specific misconduct for which they are being sued. Their assertion that the allegations are "improperly lump[ed] together" is

meritless; where multiple defendants are alleged to be part of a conspiracy, it is entirely proper to allege that they acted in concert to achieve its unlawful ends.

### IV. PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.

In the event the Court finds any portion of the Complaint deficient, Plaintiff respectfully requests leave to amend. Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend should be "freely give[n] when justice so requires." Dismissal with prejudice is inappropriate unless it is clear that the complaint could not be saved by amendment. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003). Plaintiff is confident that any perceived deficiency can be cured.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion to Dismiss in its entirety.

Dated:  March 20, 2026          LAW OFFICES OF PAUL J. STEINER

By:
Paul J. Steiner
Attorneys for PLAINTIFF DR. SANFORD ALAN KELLMAN

8

PLAINTIFF'S OPPOSITION TO DEFENDANTS KEZAR PUB, LLC AND MAD DOG IN THE FOG, INC.'S MOTION TO DISMISS